No. 25-11573

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

**LAQUANA ALEXANDER**

*Plaintiff-Appellant*

*v.*

**PATRICK LABAT**

*Defendant-Appellee*

On appeal from the United States District Court
for the Northern District of Georgia
No. 25-11573

## APPELLANT'S OPENING BRIEF

Mario B. Williams
**HDR LLC**
3480 Peachtree RD, NE
Second Floor
Atlanta, GA 30326
Tel: (470) 257 2485
mwilliams@hdrattorneys.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In compliance with Federal Rule of Appellate Procedure 26.1 and 28(a), and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Miguel Jackson and Alexias Steverson, appellants in the above-referenced matter, certify that the following is a complete list of the trial judge and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case on appeal:

1. Humanity Dignity and Rights LLC;

2. Laquana Alexander, Appellant;

3. Mario Williams, counsel for Appellant;

4. Barron Law LLC;

5. Patrick Labat, Appellee;

6. Lynsey Morris Barron, counsel for the Appellee;

7. Fulton County, Georgia; and

8. Fulton County Sheriff's Office.

## REQUEST FOR ORAL ARGUMENT

Ms. Alexander seeks oral argument because the issues are novel and oral argument will assist this Court in making a well-reasoned determination. The issue in this case has not been addressed often because whether an official was acting under color of law versus acting in his/her private capacity rarely arises, and the few times the issue has been addressed—the analysis is extremely fact driven. Unlike any other case in this Circuit that has addressed this issue, Ms. Alexander First Amendment right to be free from retaliation and her correlated right of potentially holding a public official liable for violating said first amendment right are at issue. If the lower court's ruling is allowed to stand, all government officials can seek and **obtain** a temporary restraining order against a citizen when that citizen—solely and exclusively—repeatedly criticizes said public official's conduct in his/her official capacity. That type of outcome will significantly affect this Circuit while having persuasive authority throughout the country. Consequently, providing this Court with an opportunity to question counsel about the facts and law, Ms. Alexander believes will assist this Court.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (Amended) ..................................................................................C1

REQUEST FOR ORAL ARGUMENT.................................................................. i

TABLE OF AUTHORITIES........................................................................... iii

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF THE ISSUES ....................................................................1

STATEMENT OF THE CASE........................................................................1

    I.    Statement of Facts....................................................................1

    II.    Procedural history and facts before the court regarding admission in judicio by the Labat..............................................................................3

SUMMARY OF ARGUMENT.......................................................................5

STANDARD OF REVIEW ...........................................................................6

    A.    Standard of Review for Motion to Dismiss ................................6

    B.    Standard of Review for Denial of Motion to Amend ...............10

ESSENTIAL POINT PRIOR TO MAKING ARGUMENT.................................11

ARGUMENT ...........................................................................................12

CERTIFICATE OF SERVICE .....................................................................23

# TABLE OF AUTHORITIES

## Cases

Almand v. DeKalb Cnty., 103 F.3d 1510, 1513 (11th Cir. 1997) .........17, 18, 20, 21

Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ...........................................................8

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) ...................5, 6, 7, 8, 10, 20

Cate v. Oldham, 707 F.2d 1176, 1185, 1189 (11th Cir. 1983) ...............................12

Erickson v. Pardus, 551 U.S. 89, 93 (2007) ..........................................................7

Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 172 (1967) ..........................9, 16, 22

J & J Sports Prods., Inc. v. Los Ranchos Latinos Inc., No. 22-13434, 2024 LX 84766, at *10 (11th Cir. Aug. 1, 2024) ....................................................................16

Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 50 (2011) .............................9

Myers v. Bowman, F.3d 1319, 1322-31 (11th Cir. 2013) ………………………….
..................................................................................... 5, 11, 12, 13, 14, 15, 16, 17

PDVSA US Litig. Tr. v. Lukoil Pan Ams., LLC, 991 F.3d 1187, 1193 (11th Cir. 2021) .....................................................................................................................16

Heslop v. AG of the United States, 594 F. App'x 580, 583 (11th Cir. 2014) ............6

Scott v. Harris, 550 U.S. 372, 380 (2007) .....................................................10, 26, 22

Seiger v. Philipp, 735 F. App'x 635, 637 (11th Cir. 2018) ..................................6, 10

Simril v. Twp. Of Warwick, 2001 WL 910948, at *3 (E.D. Pa. Aug. 13, 2001).......8

## Statutes & Other Authorities

Federal Rule of Appellate Procedure 28(a)(4) .........................................................1

Circuit Rule 28-1(g) ...............................................................................................1

28 U.S.C. §§ 1331 and 1343 ...................................................................................1

28 U.S.C. § 1291 ...................................................................................................1

ECF 8 ....................................................................................................4, 17, 20, 22

Fed. R. Civ. P. 8(a)(2) ............................................................................................7

Rule 12(b)(6) ..........................................................................................................7

ECF 1 ...................................................................................................................16

ECF 17 ......................................................................................................17, 19, 21

## JURISDICTIONAL STATEMENT

Pursuant to Federal Rule of Appellate Procedure 28(a)(4) and Circuit Rule 28-1(g), Appellants attest that: (1) the district court had subject-matter jurisdiction over Plaintiffs' complaint under 28 U.S.C. §§ 1331 and 1343; (2) this Court has subject-matter jurisdiction over the district court's final order and judgment under 28 U.S.C. § 1291; and (3) the district court entered its judgment on April 16, 2025, and Appellants timely filed their notice of appeal on May 7, 2025.

## STATEMENT OF THE ISSUES

1. Did the district court err by ruling as a matter of law the Sheriff was acting in his personal capacity when (1) he gained a temporary protective order after Appellant criticized his performance as a Sheriff and (2) he obtained the TPO without appearing in person and without signing the verification page or the actual application for the TPO?; and

2. Did the distract court err by denying Appellants motion to amend, reasoning that the amended complaint was futile?

## STATEMENT OF THE CASE

### I.    Statement of Facts

Ms. Alexander, a well-known advocate for the rights of vulnerable peoples, was initially a staunch advocate of Patrik Labat's first election to the position of

Sheriff of Fulton County, GA. However, during his tenure, Ms. Alexander became disenchanted with Labat's conduct as Sheriff. Consequently, she began advocating for his removal on social media, citing issues such as her belief that Labat, in his capacity as Sheriff, had misappropriated funds, been a poor steward of Fulton County Jail (with numerous unexplained deaths), and had detained people for unlawful lengthy time periods, inter alia. Ms. Alexander's public criticism of Labat can fairly be characterized as relentless.

Unbeknownst to Ms. Alexander, Labat sought a Temporary Petition for Stalking Temporary Protective Order (TPO) and obtained said TPO against Ms. Alexander on March 19, 2024, with a hearing set for April 12, 2024, to determine whether the granted TPO would continue. Because it was granted on March 19, 2024, the TPO by its express language was given to local law enforcement, inter alia.

Specifically, the TPO states "...internet/cyber stalking and bullying. Continues to harass petitioner and his wife on social media alleging frivolous activities and misappropriation of funds. Respondent was asked to stop tagging petitioner and spouse in her post, however she continues to do so daily." Relevantly, Ms. Alexander never tagged Labat or his wife, and Labat has never provided any evidence in this case, or pursuant to his TPO petition, to support said allegations.

Relevantly, Ms. Alexander found out about the TPO **after** it had been granted, and she immediately sought media involvement. Only after the media had become involved did Labat withdraw the TPO.

Additionally, prior to the hearing and decision by the lower court, Ms. Alexander moved to amend her pleading to add the following fact: "In fact, Defendant forced the TPO to be filed while acting in his capacity as Sheriff, as evidenced by the fact that the Clerk of the Superior Court attempted to dissuade Defendant from filing said TPO," and Defendant responded by saying, "I am the fucking Sheriff. Get it done." The motion to amend was denied.

## II.      <u>Procedural history and facts before the court regarding admissions in judicio by Labat</u>

Ms. Alexander filed her complaint on July 22, 2024, and Labat filed his Motion to dismiss on October 8, 2024. Critically, the actual TPO was attached to Labat's Motion to Dismiss. Significant to that fact is the fact that Labat admitted in judicio in his Motion to Dismiss that he never signed the TPO. In fact, Labat admitted he never signed the verification, which literally reads:

> "personally appears Patrick Labat, who being duly sworn state that she/he is the Petitioner in the above styled case and that the facts set forth in the forgoing Petition for Stalking Temporary Protective Order are true and correct."

It is worth repeating that despite the express language demonstrating that Labat appeared before the judge to verify the facts in the TPO, and despite the Verification appearing as though it was signed by Labat, Labat made an admission in judicio in his brief that he never signed the Verification and thus did not appear before the court as alleged in the Verification section/page (see ECF 8, pp. 5-6, stating "[i]mportantly, the Petition makes clear that Defendant neither signed nor submitted the Petition").

Additionally, as a matter of fact, the actual TPO signature says "m/s attorney for Labat" next to Labat's signature, indicating that Labat's attorney signed for him. However, the signature for the verification page contains **no** such representation at all; rather Labat's signature is alone above the "Petitioner Signature." Furthermore, the signature of an alleged public notary is next to Labat's signature on the verification page.

With the above all on record before the lower court, on March 20, 2025, the lower court scheduled a video hearing for March 31, 2025, with respect to Labat's pending Motion to Dismiss. Prior to the hearing, on March 28, 2025, Ms. Alexander filed her Motion to Amend. The hearing was held on March 31, 2025, and the Court subsequently granted Labat's Motion to Dismiss while denying Ms. Alexander's Motion to Amend.

## **<u>SUMMARY OF ARGUMENT</u>**

The argument is as follows: (1) once applying the standard of review to the well-pled facts in this case, Ms. Alexander's complaint plausibly suggests that the entire reason Labat sought a protective order spawned from Ms. Alexander's criticism of him in his capacity as a sheriff, not as a private citizen, and (2) once applying the standard of review to the well-pled facts in this case, Ms. Alexander's complaint plausibly suggests many reasons to believe that Labat would not have been able to obtain said TPO without appearing before a judge and without actually signing his Petition. The only reason Labat was able to obtain said TPO given those facts is because he is the Sheriff. No private citizen could have achieved that result without appearing before the judge and not signing their own verification of facts as found in said TPO. <u>Myers v. Bowman</u>, F.3d 1319, 1322-31 (11th Cir. 2013) (published). In sum, Ms. Alexander has pled "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence…" to support her claim at issue. See <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007).

Next, Ms. Alexander will demonstrate that the Court abused its discretion by denying Ms. Alexander's Motion to Amend because the motion was filed prior to the hearing and ruling on Labat's Motion to Dismiss; that the Motion to Amend was the first attempt to amend; and that the motion demonstrates that Labat used his authority as the Sheriff to ensure that the TPO was obtained without his signature

and without his presence before a judge—a result that no private citizen could achieve.

## STANDARD OF REVIEW

I. **The controlling standard of review as applied to the facts argued before the lower court plausibly suggests that Labat violated Ms. Alexander's First Amendment rights while acting under color of law**

It is a well-established fact that this Court "review[s] de novo a district court's grant of a motion to dismiss for failure to state a claim." Heslop v. AG of the United States, 594 F. App'x 580, 583 (11th Cir. 2014). Regarding the denial of a Motion to Amend, this Court reviews "a district court's denial of a motion to file an amended complaint for abuse of discretion." Seiger v. Philipp, 735 F. App'x 635, 637 (11th Cir. 2018).

### A. Standard of Review for Motion to Dismiss

As such, the following is the standard of review regarding a motion to dismiss: When confronted with a motion to dismiss, the plaintiff carries the burden of demonstrating that his facts amount to a plausible claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). This is accomplished by pleading "enough fact to raise a reasonable expectation that discovery will reveal evidence…" to support the claim at issue. Id. at 556. In other words, a plaintiff must plead enough facts to

plausibly suggest that the particular claim is viable—with emphasis on the phrase *plausibly suggest*. Id. at 566 (stating, "[w]e think that nothing contained in the complaint invests either the action or inaction alleged with a *plausible suggestion* of conspiracy") (emphasis added); Id. at 557 (stating, "the need at the pleading stage for allegations plausibly suggesting….").

Moreover, to plausibly suggest that a particular claim is viable does not require a surplus of well-pled facts; Fed. R. Civ. P. 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief…." Indeed, Fed. R. Civ. P. 8(a)(2) has created a fair-notice standard for complaints and thus only necessitates "short and plain statements" that "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007). This is to say that Fed. R. Civ. P. 8(a)(2) does not require an "exposition of [plaintiff's] legal argument" and "need not pin plaintiff's claim for relief to a precise legal theory." Id.

In that context, the Supreme Court has reiterated time and again the following 'general standards,' so as to notify all courts that Twombly has not created a heightened pleading standard:

1. A complaint challenged under Rule 12(b)(6) does not have to plead detailed factual allegations. Twombly, 550 U.S. at 555;

2.  There exists an assumption that all factual allegations in the Complaint are true—even if doubtful in fact. Id.;

3.  A well pled complaint may proceed even if it strikes a savvy judge that the actual proof of those facts is improbable, and recovery is 'very remote and unlikely.' Id. at 556; and

4.  There is no requirement of "heightened fact pleadings of specifics." Id. at 570.

These general standards leave little wonder as to why courts generally disfavor motions to dismiss. Simril v. Twp. Of Warwick, 2001 WL 910948, at *3 (E.D. Pa. Aug. 13, 2001) (stating that "[t]he granting of a Rule 12(b)(6) motion to dismiss "is highly disfavored…'") Since publishing Twombly, the Supreme Court has cited the opinion at least thirteen times, including the case Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009), which is referred to in conjunction with Twombly many times as the "Twombly/Iqbal" standard. Notably, Iqbal re-enforced the 'plausibly suggests' standard:    A complaint must only "*plausibly suggest* an entitlement to relief." Id. at 681 (emphasis added). On top of that, Iqbal noted the following:

1.  Determining whether a fact plausibly suggests a claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679-81;

2. Where the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." Id.; and

3. Courts should strike conclusory allegations, when, and only when, they are **not** supported by well-pled facts within the allegation. Id.

**This last point is often misapplied** because courts have stricken conclusory statements erroneously, failing to adhere to the Supreme Court's admonishment that conclusory statements "might well be sufficient *in conjunction with a more specific allegation….*" to meet the prevailing standard. Id. In 2011, the Supreme Court drove this point home by re-emphasizing that a complaint's conclusory allegations must be "taken collectively" with all facts to determine whether the complaint *plausibly suggests* that a defendant engaged in alleged prohibited conduct. Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 50 (2011).

With that exception established, coupled with the notice-pleading standard's low threshold is the powerful requirement that, at the motion to dismiss stage, courts must accept factual "allegations of [Plaintiff's] complaint and supporting affidavits as true." Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 172 (1967). Additionally, all reasonable inferences derived from those facts must be accepted as true. Id. Additionally, all ambiguities must be resolved in favor of the plaintiff and his or her

accepted facts, unless otherwise contradicted by irrefutable evidence. <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)

In sum, the *plausibly suggest* standard requires only that the alleged facts, considered to be true, "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555. This is accomplished by plaintiffs "nudg[ing] their claims across the line from conceivable to plausibl[y] [suggesting]" enough facts to support the claim at issue. <u>Id</u>. at 556.

### B.    Standard of Review for Denial of Motion to Amend

Foremost, the Court's discretion to deny a motion to amend is not "unfettered." <u>Seiger v. Philipp</u>, 735 F. App'x 635, 637 (11th Cir. 2018). The Seiger Court established factors to be considered:

1. undue delay;
2. bad faith or dilatory motive on the part of the movant;
3. repeated failure to cure deficiencies by amendments previously allowed;
4. undue prejudice to the opposing party by virtue of allowance of the amendment;
5. and futility of amendment.

These factors add context to the abused of discretion standard of review. <u>Id</u>.

## ESSENTIAL POINT PRIOR TO MAKING ARGUMENT

In <u>Myers</u>, the principal case at issue concerned a magistrate judge helping his daughter gain custody of a pet dog after a planned marriage dissolved. The <u>Myers</u> court discussed two other precedential cases about whether a public official was acting under color of law. One case was about a serious issue: rape. <u>Myers</u>, 713 F.3d at 1330. Here, it was obvious that a police officer is not acting under color of law when he re-enters a home to rape a person. <u>Id</u>. The other case was just as straightforward: a correctional officer is simply not acting under color of law when, after arriving home to find her daughter in bed and a naked boy hiding in the closet, he uses duty handcuffs to make an arrest. <u>Id</u>. The issue in this case is very different.

The honorable and much respected Antonin Scalia once responded to a question about taking a significant amount of time to properly frame an issue by saying:

> "That's what the case is about, especially at the Supreme Court level. We don't care who wins or loses. We care about what the legal issue is that is going to decide **not just this case** but hundreds of other cases….. I want to know how this principle, this issue that you've brought before us, is going to play out in hundreds of other cases. I am not about to do justice to your client **at the expense of creating injustice in hundreds of other cases that will never come before me, that I will never see**. So what the process issue is and knowing in oral argument how your resolution of that issue plays out in other circumstances, which is what the appellate judge is always concerned with. "

(The Journal of Legal Writing, Vol. 13, Interviews With United States Supreme Court Justices, Antonin Scalia, Introduction by Bryan A. Garner, pp. 55-77 [2010].)

This case concerns the First Amendment, a "jealously safeguarded" right even amongst all of our constitutional rights. Cate v. Oldham, 707 F.2d 1176, 1185, 1189 (11th Cir. 1983). The case further concerns what first amendment rights look like in the Eleventh Circuit when a public official is the target of incessant yet lawful criticism about his/her conduct as a public official. However, said public official is nevertheless permitted to escape even possible liability under our First Amendment for seeking a Stalking Protective Order in response to lawful criticism about his/her performance as a public official. If this Court allows the result of the District Court to play out hundreds of times in the future, the First Amendment will yet again be eroded at a time in our history when people simply do not respect others' right to free speech.

## **ARGUMENT**

Myers v. Bowman is factually distinct from Ms. Alexander's case, and actually demonstrates that Ms. Alexander pled sufficient facts to plausibly suggest that the Defendant acted under color of state law. Myers 713 F.3d at 1322-31. Relevantly, in Myers, a planned marriage fell apart at the last second. Two items became the focus of a bitter dispute: (1) an engagement ring, which the former groom Dustin Myers demanded be returned and (2) a pet dog, Lexi, whom the former fiancée demanded custody over. Id. Significantly, the father of the former fiancé was Murry Bowman, the magistrate judge of Jefferson County. Judge Bowman "called

Dustin [Myers] and requested that he return Lexi to his daughter. Myers agreed to return the dog in exchange for the engagement ring and some money that he said Kelley owed him." Myers, 713 F.3d at 1323.

Soon after the agreement, Judge Bowman spotted the former groom at a local bank and "pulled his truck alongside Myers' truck, exited his vehicle, approached Myers' truck wearing the engagement ring on his pinkie finger, tossed the ring through the window of the truck and into Myers's lap, and said, "[H]ere, I've got your goddamn ring." Id. However, Judge Bowman noted that he could not return the money at the time per the agreement. Id. Consequently, Myers drove away with the ring and the dog because, although he received the ring, Myers did not receive the money as agreed. Id. Judge Bowman thus involved the police, claiming that Myers had stolen his dog, and the situation escalated quickly. Id.

Eventually, the officer stopped the truck and arrested Myers (driver) and the passenger. Once arrested, Judge Bowman showed up and retrieved Lexi, the pet dog, from the truck. Id. After retrieving Lexi, Judge Bowman berated Myers, telling him "that this was his goddamn county and [he] wanted to know who the fuck [Myers] was coming up there in his fucking county acting like that." Id., at 1325. One of the arresting officers joined in the berating of Myers, telling him "[h]e's the fucking magistrate judge up here. Who the fuck you think you messing with?" After that, Judge Bowman ordered Myers and his companion released, while driving home his

aforementioned status as king of the county, telling Myers "[o]nce again, this is my county. I don't want to ever see you back up here. . . . I'm fixing to let you go. You get your shit, and I better not fucking catch you back in my county." Id. Myers left and Lexi stayed with Judge Bowman.

Myers eventually filed a lawsuit. The lower court granted summary judgment, inter alia, to Judge Bowman, stating that he was not acting under color of state law, and thus Myers' Section 1983 claim failed. The Eleventh Circuit affirmed.

As far as whether Judge Bowman was acting under color of state law at all relevant times, the Eleventh Circuit Court of Appeals first established the focal point of its inquiry. The Myers court specifically focused on whether Judge Bowman was acting under color of state law when he called his Deputy Clerk to instruct her to report Lexi as being stolen: "[Bowman] did not act under color of law when he reported the theft of the dog." Id., at 1329. The Meyers court reasoned that in the act of reporting his stolen dog, Judge Bowman simply acted as a private citizen whose dog was allegedly stolen, because the "theft occurred **in connection with a private dispute** and not a matter that was before [Bowman] in his official capacity as a magistrate judge, and [Bowman's] alleged a theft of **private property**, not any property that belonged to the government." Id., at 1330.

The <u>Myers</u> court further reasoned that "[a]lthough [Bowman] instructed Evans to remove Myers from the truck, that **instruction did not cause** Myer's arrest because [Bowman] gave the instruction **after Evans was already in the process of arresting** Myers." <u>Id</u>. Lastly, as far as using the county-provided communication device, the <u>Myers</u> court stressed that the device was "not a proprietary technology of the government. **Any citizen** could have purchased the technology, and Evans testified that ordinary citizens sometimes reported crimes directly to police officers **using a SouthernLINC device** or cellular phone instead of by calling a police dispatcher." <u>Id</u>, at 1330-31.

Ultimately, the <u>Myers</u> court made the following key point that must be analyzed in all cases with respect to whether an official was acting under color of law: "there is no reason to believe that [Bowman] would not have done, or been able to do, what [he] did to [Myers]" without the use of his SouthernLINC radio, and we must conclude that [Bowman] did not act under color of law." <u>Id</u>. As stated differently by the <u>Myers</u> Court, this concerns whether "the defendant in a [section] 1983 action has exercised power 'possessed by virtue of state law and **made possible only** because the wrongdoer is clothed with the authority of state law.'" Again, this concerns whether there is any reason to believe that the government official would not have been able to accomplish the contentious act without his/her authority as a government official. <u>Id</u>, at 1330. Here is where the district court erred.

In this case, the standard of review is of foremost significance because at this litigation stage, Ms. Alexander's well-pled facts and reasonable inferences from those well-pled facts are deemed true, and ambiguities are resolved in her favor. See Gardner, 387 U.S. at 172; Scott, 550 U.S. at 380. Consequently, the issue before this Court is whether, at this litigation stage, Ms. Alexander's Complaint **plausibly suggests** (1) whether the entire issue spawned from the Sherriff's capacity as a sheriff rather than from a private dispute, and (2) whether there exists any reason believe that the Sheriff could not have secured the temporary protective order at issue—in the manner he secured said TPO—without using his authority as the Sheriff. Myers, 713 F.3d at 1329-31; see also PDVSA US Litig. Tr. v. Lukoil Pan Ams., LLC, 991 F.3d 1187, 1193 (11th Cir. 2021) (reasoning that "[i]n our adversarial system, we follow the principle of party presentation . . . . [W]e rely on the parties to **frame** the **issues** for decision and assign to courts the role of neutral arbiter of matters the parties present"); see also J & J Sports Prods., Inc. v. Los Ranchos Latinos Inc., No. 22-13434, 2024 LX 84766, at *10 (11th Cir. Aug. 1, 2024).

So framed, the accepted facts established the following:

1. The plaintiff strongly and consistently criticized Labat with respect to his conduct as Sheriff, a public official (ECF 1, ¶¶ 5);

2. In response, Labat sought and obtained a TPO against Ms. Alexander; and

3. The TPO itself literally complains that Ms. Alexander will not stop making "frivolous" allegations and the allegation of misappropriation of funds (ECF 8-1).

Stopping here, under the applicable standard of review, the impetus for Labat seeking said TPO was Ms. Alexander's criticism of him as a Sheriff; consequently, unlike <u>Myers</u>, this is not an event that spawned from a private dispute. <u>Myers</u>, 713 F.3d at 1323-31. This is also where Ms. Alexander disagrees with the lower court.

The lower court acknowledged that Ms. Alexander's protected speech was the impetus for Labat seeking the TPO: "[S]heriff Labat's exposure to Ms. Alexander's criticism and his response may have been caused and motivated by his activities as Sheriff of Fulton County…." (ECF 17, p. 7 Court Order). However, the lower court further reasoned that the act of filing a TPO is something any citizen can do and thus Labat pursued the TPO as a private citizen: "Sheriff Labat filed his TPO petition no differently from any other litigant, making this case analogous to <u>Almand</u>. Accordingly, Ms. Alexander cannot assert a § 1983 claim based on Sheriff Labat seeking and obtaining a TPO petition." <u>Id</u>. The lower court erred.

First, the <u>Almand</u> decision of 1992 was analyzed by the <u>Myers court</u>; <u>Myers</u> is most relevant because it is a published opinion that reviewed precedential authority. However, <u>Almand</u> itself requires reversal. First, as the <u>Almand</u> court noted,

"[w]hether conduct constitutes state action is no simple question of fact," because the inquiry is fact intensive and also mixed with governing law. Almand v. DeKalb Cnty., 103 F.3d 1510, 1513 (11th Cir. 1997).

With that established, the Almand court concluded that "the assumed facts show that [the law enforcement officer] was acting as a private person, not a state actor under color of state law, when he forced his way into Ms. Almand's home and, overcoming her resistance by force, raped her." Id., at 1514. The court came to that conclusion because the officer's initial entry in the apartment was gained under color of law, as he used his status as an officer investigating the rape of Ms. Almand's daughter to gain entry. However, once Ms. Almand demanded the officer leave and shut the door, the officer's conduct as a state actor ceased. The officer broke down the door as a private citizen; as the Almand court stated, and the lower court quotes, the officer was "no different from any other ruffian." Id., at 1515.

The essential reasoning of Almand, however is that "[the Officer's] act of breaking into the apartment and, by force, raping Almand was a **private act** not accomplished because of 'power possessed by virtue of state law and **made possible only because** the wrongdoer [was] clothed with the authority of state law.'" Id. The facts here differ drastically.

Again, both Ms. Alexander and the lower Court agree that Ms. Alexander's protected free speech criticism of Labat as a sheriff was the impetus for Labat seeking a TPO. (ECF 17, p. 7 Court Order, stating "[S]heriff Labat's exposure to Ms. Alexander's criticism and his response may have been caused and motivated by his activities as Sheriff of Fulton County….") This fact distinguishes this case from Myers, where no constitutional protected activity motivated Judge Bowman to report his dog stolen. It also distinguishes is from Almand, where no constitutionally protected activity motivated the officer to bust down the door like a ruffian and sadistically rape a woman. In sum, the genesis of the public (not private) dispute in this case was constitutionally protected speech. This differs greatly from Myers and Almand, which this Court noted were absolutely private disputes/private acts from their origin. And there is more.

The Almand court distinguished liability between an officer who breaks down a door and rapes a woman and an officer (a Sheriff) "where [the] sheriff **overcame her resistance** by intimidation **linked to his authority**: 'I can do what I want, I'm the sheriff.'" Id. Further, it is noted that "any thug or burglar could have committed the same violent acts" and that once the officer broke the door down "his **status** as a police officer had no bearing on his behavior." Id.

In this case, the record argued before the Court demonstrates that Labat's **status** as the Sheriff did bear on his obtaining the TPO and that he could not have

19 | P a g e

obtained the TPO under the facts of this case but for his status as Sherriff. Again, Labat, through admission in judicio, argues and established as a matter of fact that he did not even appear before the court to verify the facts in said TPO; did not sign the TPO application; and did not actually sign the sworn verification, although his name and signature appear on said verification. (See ECF 8, pp. 5-6, stating "[i]mportantly, the Petition makes clear that Defendant neither signed nor submitted the Petition.") These facts plausibly suggest, and actually demonstrate when considered true, that obtaining the TPO was "**made possible only because** the wrongdoer [was] clothed with the authority of state law." Almand, 103 F.3d at 1513-15. Said differently, the only way Labat was able to obtain a TPO without appearing or even verifying the facts in the TPO was through his status and authority as the Sheriff—because we all know that no private resident/citizen could have gained said result under those fact. Myers, 713 F.3d at 1323-31; see also Almand, 103 F.3d at 1513-15.

In sum and based on the above, the lower court erred as a matter of law because this case is not analogous to Almand and because the facts before the lower court as related to the governing standard of review were "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence…" to support Ms. Alexander's claim at issue, while also plausibly suggesting a First Amendment

retaliation claim. see <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007). The Court should vacate the lower court's decision and remand this case for discovery.

## I.    The lower Court abused its discretion by denying Ms. Alexander's Motion to Amend her complaint

The Motion to Amend should have been granted because the language in the amendment, when considered true, demonstrated that Labat used his position to overcame resistance by intimidation linked to his authority. <u>Almand</u>, 103 F.3d at 1513-15. The Amended Complaint contained the following new fact:

> "In fact, Defendant forced the TPO to be filed while acting in his capacity as Sheriff, as evidenced by the fact that the Clerk of the Superior Court attempted to dissuade Defendant from filing said TPO and Defendant responded by saying 'I am the fucking Sheriff. Get it done.'"

(ECF 15-1 ¶ 15.)

The court stated that [d]espite the additional factual allegation, Ms. Alexander fails to plausibly allege Sheriff Labat acted under color of state law when he filed the TPO, meaning the Court will deny the proposed amendment as futile. ECF 17, p. 8, Court Order. The court erred.

Pursuant to <u>Almand</u>, when a public official overcomes resistance by intimidation linked to his authority, such as overcoming the resistance of the Clerk of Court by saying "I am the fucking Sheriff. Get it done," then that may, especially at this litigation stage, plausibly suggest that Labat was acting under color of law. <u>Almand</u>, 103 F.3d at 1513-15

Moreover, when that fact is considered true and Labat's attributed statement of "I am the fucking Sheriff. Get it done" <u>is combined</u> with the recorded evidence in this case of Labat obtaining the TPO without his signature on the petition or verification page and without appearing before the judge, the intimidation linked to Labat's authority as Sheriff is undeniable. And if there is any doubt, that doubt is resolved to the favor of Ms. Alexander, when considering true all reasonable inferences. See <u>Gardner</u>, 387 U.S. at 172; <u>Scott,</u> 550 U.S. at 380; (See ECF 8, pp. 5-6, stating "[i]mportantly, the Petition makes clear that Defendant neither signed nor submitted the Petition"). Because the lower court erred as a matter of law by concluding that the amendment was futile, if this Court agrees with Ms. Alexander's reasoning then that order should be vacated.)

WHEREFORE, Ms. Alexander moves this Court to vacate the lower court's decision and remanded this case, to proceed with discovery.

Respectfully Submitted: **<u>September 23, 2025</u>**,

**/s/ MARIO B. WILLIAMS**

Mario B. Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**
Life Time Work - Buckhead - at Phipps Plaza
3480 Peachtree Road, NE, Second (2nd) Floor
Atlanta, Georgia 30326
Tel.: 470-257-2485
Email: mwilliams@hdrattorneys.com
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants.

Respectfully Submitted: **September 23, 2025**,

**/s/ MARIO B. WILLIAMS**

Mario B. Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**
Life Time Work - Buckhead - at Phipps Plaza
3480 Peachtree Road, NE, Second (2nd) Floor
Atlanta, Georgia 30326
Tel.: 470-257-2485
Email: mwilliams@hdrattorneys.com
*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

*Check the appropriate box in section 1, and check the box in section 2.*

**1.    Type-Volume**

☑    This document complies with the word limit of FRAP    [insert Rule citation]
because, excluding the parts of the document exempted by FRAP 32(f) and
[insert applicable Rule citation, if any]                , this document contains
6,003                words.

**or**

☐    This brief complies with the line limit of FRAP    [insert Rule citation]    because,
excluding the parts of the brief exempted by FRAP 32(f) and
[insert applicable Rule citation, if any]            , this brief uses a monospaced
typeface and  contains        [state the number of]        lines of text.

**2.    Typeface and Type-Style**

☑    This document complies with the typeface requirements of FRAP 32(a)(5) and the
type-style requirements of FRAP 32(a)(6).

(s) Mario B. Williams

Attorney for Laquana Alexander

Dated: September 23, 2025

Rev.: 12/16